The next case on our calendar is the underwriting members of Lloyd's vs. Al-Rajhi Bank. Thank you. Thanks. Good morning, counsel. Good morning. May it please the court. May it please the court, Richard Klingler, for Lloyd's Syndicate, other plaintiffs. Under this court's decision, the effects test is met by support for Al-Qaeda that is not merely foreseeable, but is purposeful, either direct in knowing or acting in concert, as a fellow traveler advancing Al-Qaeda's objectives. JASTA, by creating a new cause of action for concerted action, new claim for concerted action, changed the legal analysis for both proximate cause and for jurisdiction. They didn't change the due process requirements of personal jurisdiction, however, did they? They did not, but both proximate—we agree with Al-Rajhi Bank that proximate cause bears upon the jurisdictional analysis, and JASTA, by creating the new claim, did change the proximate cause test, and Walden indicates that the claim is an input into the personal jurisdiction analysis. By focusing on what the claim-related action is related to the forum, it makes the claim relevant. Walden indicates that the scope of the claim determines the scope of jurisdiction. Same with proximate cause. Lindy holds that for a JASTA claim, the Terrorist Act itself serves as proximate cause for the entire concerted action, and it holds that there's different proximate cause for a primary liability claim compared to a JASTA claim. You alleged in your complaint, did you not? You alleged in your complaint that the bank loaned money to al-Qaeda with awareness of its terrorist intentions towards the United States, and with awareness that the loans would be furthering that objective. That's right. In three respects, awareness was connected to fostering al-Qaeda's objectives. One is through pre-aboard contributions. I'm not sure they're loans, they're more direct funding. The second is through non-standard financial services, such as courier services and joint fundraising. And the third is through the provision of financial services itself, with that awareness that we're saying that the bank purposefully opened its doors to al-Qaeda operatives, including the 9-11 attackers. It was not just unlucky in its customers. You requested the opportunity to take discovery on this issue of in personam jurisdiction, of the bank's susceptibility to in personam jurisdiction? We did directly in the opposite. Which was denied. That's correct. It was denied as futile. But that's because the, well, we did make the request, what we asked for was the ability to undertake additional discovery in relation to the acts of support and the knowledge related to it that was indicated in the CIA reports, and that would build upon the specific transfers and the specific types of support that we alleged in the complaint. That's one of the things you're asking for now, is that we direct that you be allowed to get that discovery? Absolutely. And we think there's, in terms of the abuse of discretion standard, both this is information that's uniquely within the bank's purview, and the decision, the futility decision rested upon a notion that there was no legal theory that could possibly support our claim. And that's clearly not right in three respects in terms of the court's conclusion or belief that the O'Neill decision had resolved this under any factual circumstance against us. First, the 2013 decisions simply did not address the issue here that would give rise to liability. Namely, the bank's intent for purposes of jurisdiction and the bearing of its controlling officer's intent and knowledge on the bank's actions. The family members were dismissed under a general rule of terrorist tax three that senior officers are too remote from the harm related to banking activities. And the ARB decision itself simply didn't reach the issue because it determined that there wasn't aiding and abetting liability under the ATA, which JASTA clearly reversed. Nor is- Repeat the last thing you said? Yes, that- About aiding and abetting liability. I didn't catch what you said. The point that the prior cases didn't address the issue here because in the case of the ARB decision, it didn't grapple with the record or make a determination because it determined that aiding and abetting was not the basis for an ATA claim. And that's, of course, what- A permissible basis. That's right. The ATA did not support, that Congress had not intended the ATA to support an aiding and abetting claim. Of course, Congress in JASTA corrected that or created a new claim. In addition, there's no broad- There's no doubt as of now that aiding and abetting terrorist activity in the United States, if the aiding and abetting occurs outside the United States, but the terrorist activity that is aided and abetted outside the United States occurs in the United States, that supports liability under the ATA. That's clearly Congress's intent. It was thinking about this MDL action in the 9-11 attack specifically when it made that amendment. And that's clear, you know, even beforehand in the O'Neill decision, both granting jurisdictional discovery for the charitable leaders and for COTI. They made the contributions. They granted the support to Al-Qaeda overseas. And the link was to the 9-11 attacks directly. Also, there is no general rule, as the district court seemed to think, that financial services simply couldn't be the basis of personal jurisdiction. The O'Neill decision applied the terrorist attacks three analysis. It was called for a case-by-case determination of whether that support is merely foreseeable or is purposeful. It just said nothing about a broad rule, and it wouldn't have made sense to, because the material support definition includes financial services. The Weiss versus National Westminster case is predicated on the notion that financial services can be the basis for support for terrorism. The executive branch's policies, as well as Congress's, since well before the 9-11 attacks have focused on financial services as the basis for—I'm sorry, I see my time's up. You can finish your sentence, certainly. That the financial services are the lifeblood of terrorism and can be the type of purposeful support give rise to liability. Thank you. You have reserved three minutes for rebuttal. Thank you. We'll hear from the appellee, Al-Rajhi Bank. May it please the court, Christopher Curran for Al-Rajhi Bank. Our position, obviously, is that the dismissal of Al-Rajhi Bank needs to be affirmed on the basis of the three prior decisions by this court in this same multi-district litigation. I start with the 2008 decision involving the Saudi princes. There, this court announced the governing standard and applied it in circumstances very similar to those we're dealing with still here. There, the court said that in order to find personal jurisdiction over a non-resident party, there had to be factual allegations establishing that the foreign party purposefully directed its activities to the United States, or stated differently, expressly aimed its activities to the United States, and that the plaintiff's injuries arose from or related to that conduct. In that case, that very first case involving the four Saudi princes as well as the fifth prince, Mohammed, this court concluded that the indirect provision of financial support through charities, the same charities we're talking about now, and the provision of financial services are not sufficient to satisfy that standard of personal jurisdiction. Didn't JASTA change that? JASTA, as Your Honor suggested in your question to Mr. Klingler, JASTA can't change the  It simply can't. JASTA can add a new cause of action or claim based on aiding and abetting, but it can't Congress, through a statute or a finding, could say that a particular search satisfies the Fourth Amendment scrutiny under search and seizure. And why they should not be entitled to discovery on the in personam jurisdiction aspect? Well, in 2008, when this court considered the Saudi princes, there was a request for jurisdictional discovery, and that was denied there under the similar circumstances because You can't have it. We didn't say, no, you don't get it. There's no such discovery is not permissible. Well, this court held that a district court did not abuse its discretion in denying jurisdictional discovery under those circumstances. So we're relying on that holding as binding on this court logically. Claiming that one instance was not a denial of, was not an abuse of discretion doesn't mean that we can't direct discovery here. Well, logically, if the circumstances are indistinguishable, it would not be an abuse of discretion here as well. But I'm not just hanging my hat on that decision. That decision's not an outlier, right? Your Honor was on the panel in Jazini, which is one of the leading cases showing that in order to justify jurisdictional discovery, there has to be a prima facie showing of personal jurisdiction first. There's no such thing here. And what this court did in 2008 in this same MDL was apply Jazini. In fact, I think it cited and quoted it in the final paragraph of that decision. We're just asking for the evenhanded application of preexisting law on jurisdictional discovery. And here, it's even worse than that, right? This is Al-Rajhi Bank's second time in the Second Circuit. We were here in 2013 when this case came back. In that situation, there were two separate decisions by this court. One on personal jurisdiction, and that addressed MCB, our peer bank in Saudi Arabia, as well as Al-Rajhi's officers and officials. That was in the personal jurisdiction decision. At the same time, on the same date in 2013, this court affirmed the dismissal of Al-Rajhi Bank for lack of proximate causation. That proximate causation is not only an independent basis for affirmance now, but it's also highly relevant to the personal jurisdictional analysis. Judge Pooler, you'll remember in your SPV decision, you acknowledged that when we talk about the personal jurisdiction test and how the injuries have to arise from the foreign conduct aimed at the United States, that's a proximate causation analysis. So necessarily, this court's prior ruling that the allegations against Al-Rajhi Bank are not sufficient to establish proximate causation of the plaintiff's injuries, that there could be personal jurisdiction here. So we're resting on the three cases that this court said, all three of them. These are recycled claims. There's really nothing new here other than the new testimony from this guy Massawi, and that testimony is undeniably cryptic. He says Al-Rajhi Bank is a good brother. What the heck does that mean? No one knows what that means. The plaintiffs, they infer from that, oh, that means that Al-Rajhi Bank was an operational partner of Al-Qaeda, fully engaged and honeycombed with nonsense. You can't draw that kind of an inference from a cryptic comment like that. And the plaintiffs who took that deposition of Massawi could have asked a follow-up question, and they didn't. So what we're left with is recycled allegations that were not sufficient last time for personal jurisdiction, for proximate causation, or for jurisdictional discovery. Judge LaValle, you asked Mr. Klingler a moment ago about the, I think you said lending, Al-Rajhi Al-Qaeda, knowing Al-Qaeda's scheme, and so forth. There's no way that that can be inferred from the complaint here. The complaint has in its allegations one factual allegation about Al-Rajhi Bank making actual charitable donations, and that allegation says that in the 1990s, in 1994, 95, and 96, Al-Rajhi Bank gave charitable contributions to the Saudi High Commission for Bosnia. That was a Saudi government charity licensed by the Saudi government to raise money for people suffering in Bosnia Herzegovina. How that charitable contribution can sustain a suggestion that Al-Rajhi Bank was supporting 9-11 in the United States? Again, there's no way that that's a fair inference, and this court was right to reject that last time, and Judge Daniels was right to reject it yet again this time around. What we have here are we've got the same allegations repackaged, embellished in briefs, with unsustainable inferences being drawn, and that's what this case is all about right now. These are just recycled claims, and the charitable donations is one example. The Moussaoui allegations are another, but all of the allegations that the plaintiffs are making are either embellishments or wild inferences drawn based on very thin factual allegations. Unless the court has any further questions, I will sit at this point. Thank you. Thank you. Klinger, you have three minutes. Why is this different than these other cases that counsel alludes to? The other cases never grappled with either the bank's actions or the intent of its controlling officers. Al-Rajhi Bank was dismissed based upon the lack of proximate cause under a primary ATA liability claim, just on the basis that banking services were insufficiently tied to the actual harm. JASTA, as held by Lindy, created a different proximate cause standard. It has superseded the basis for ARB's dismissal altogether. The allegations regarding purposeful support, and that purposeful support is in the form of charitable lending, the financial opening the doors to the al-Qaeda operatives, and Charitable lending to whom? Charitable lending to the al-Qaeda affiliated entities. The allegation is that each of the charities was part of the al-Qaeda network that, through the golden chain, Osama bin Laden set those up as the operational support elements for al-Qaeda and addressed the need to move funds and money in particular. Why hasn't that ship sailed? These were allegations that were vetted in prior cases. But none, no, that's a crucial point, Your Honor. None of the allegations regarding al-Rajhi's purposeful intent have been addressed in any of the decisions that the family members were dismissed based upon an application of terrorist attack three's personal jurisdiction rule that they were too remote from the harm under a primary jurisdiction theory. The al-Rajhi decision itself said that under a primary jurisdiction theory that there was no proximate causation. Lindy says that for the 9-11 terrorist or for a JASTA claim, there is proximate cause arising in relation from the attack itself for all the concerted action parties, that basis for the dismissal has been removed and the court has never grappled with the allegations here. It's never rejected them. And those allegations of purposeful conduct relate, there are four groups of evidence related to that. One is the controlling officers of the bank who were responsible for the account policies and for the charitable giving had extensive dealings with al-Qaeda and the most senior al-Qaeda members in supporting them. The concealment of the charitable activities and the, I'm sorry, the contributions to the charities and the U.S. Government's own indications that there had been those transfers of funds and concealment of those funds is the second. Al-Qaeda itself ordered operatives to use al-Rajhi Bank and the U.S. Government's indication is that in fact the al-Rajhi officers were funding al-Qaeda, including through the charities and moving vast amounts of money to do that. Your adversary disputed your claim in answer to my question earlier that the complaint pleads providing financial resources with awareness of al-Qaeda's terrorist intentions towards the United States. Can you tell me what are the paragraphs of the complaint where, what are the paragraphs of the complaint that you say contain those allegations? Well, I think he was quibbling with your characterization of funding. That we do say that it's, it is the transfer of funds through the charitable organizations, through the Sharia board. This court in, you'll need. Where are the allegations that support the proposition that what you did for al-Qaeda was done with knowledge of, with awareness of that, that this would be used for to, to, to promote terrorist activities, or at least with knowledge that al-Qaeda was engaged in and planning to engage in terrorism. There's a section of the complaint that addresses how notoriously. Whit, point me to paragraphs. The U.S., the. Page. Why don't you give us the numbers. The paragraph numbers. Tell us what we said, what, what, and then we can follow along when you tell us. Of the, the paragraphs of the complaint. Correct. Yes. Yes. So the golden chain, the golden chain allegations, which are that Osama bin Laden set up key supporters who commit. Paragraph number, page number. 130 through 138 are the golden chain allegations. And that is, that includes Salman al-Raji's participation in a group that committed to have their controlled entities support al-Qaeda. He controlled al-Raji bank. He controlled the SAR network. Exhibit A to the complaint is the description of how these charities were integrated with al-Qaeda and functioned as al-Qaeda support operatives. So, and then there are the allegations that Suleiman and Saleh in particular had, had knowledge of the nature. What paragraph are we looking at? Sorry. The Suleiman al-Raji operations with SAR, which supported al-Qaeda and his knowledge. Sorry. Paragraphs 184 through 192. Say it again. 184 through 192 are Suleiman al-Raji's and the family's knowledge of an association with al-Qaeda. The fact that, paragraph 181, the fact that al-Raji bank officials held positions in these al-Qaeda affiliated entities and received reports, particularly for the IIRO, received reports of the IIRO's activities against the United States in coordination with al-Qaeda that he served on the, you know, the executive committee and the board associated with that. At 180 as well, the al-Raji bank officials serving as the senior officials in these al-Qaeda affiliated groups. The fact that at 178, 179, that al-Raji bank served the IIRO accounts, which are al-Qaeda accounts, that at 177 that IIRO worked directly for and part of al-Qaeda. That's also in Exhibit A that has a section related to the IIRO. So the link is that the controlling officers of the bank held positions in the al-Qaeda affiliated and had made, again, the golden chain allegations are 130 through 138, had made commitments to al-Qaeda to use the bank's facilities and support in aid of that. They knew exactly what those organizations were that they were giving money to. The IRO is alleged to be a recipient. So that's a source of awareness. The U.S. government conclusions themselves are at 158 through 162. And that's where the U.S. government, and particularly the CIA report, but also afterwards in the episode relating to whether al-Raji bank would be designated as an anti-U.S. actor or not, that the U.S. government reports also indicate the awareness. They say that the circumstantial evidence, I'm sorry, they indicate that the controlling officers directly supported extremists in al-Qaeda and likely knew that the bank was being used by extremists. And then they point separately to, at 160, that even after 9-11, there were efforts to conceal the bank's own charity payments of more than $1.1 billion moved based on the worry that they'd be seized, 159, that the al-Raji family itself were believed to be supporters of al-Qaeda. Again, the allegation as well is that the junior officers reported to the controlling officers who were the al-Raji family members who made the decisions related to how the bank would be operated. The Sharia Board funding, the opening the accounts to the al-Qaeda affiliated groups, so that's the source of awareness through this, those four prongs of the direct dealings with al-Qaeda. I'm sorry. Thank you. Your time has expired, but I know you were answering Judge LaValle's question. Thank you both very much. We'll reserve decision.